UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TYRONE HUNTER,

Plaintiff,

-against-

UNITED STATES OF AMERICA, et al.,

Defendants.

No. 24 Civ. 03778 (NSR)

**OPINION & ORDER**

NELSON S. ROMÁN, United States District Judge:

Plaintiff Tyrone Hunter ("Plaintiff"), who is incarcerated and proceeding *pro se*, commenced this action on May 10, 2024, asserting claims arising from the medical care and treatment he received while in the custody of the Federal Bureau of Prisons ("BOP") at FCI Edgefield and FCI Otisville.[1] Plaintiff asserts a negligence claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671–80, against Defendant the United States of America ("United States"), and constitutional claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), against thirteen named federal employees: registered dieticians Heather Di Stefano and Mitchel Holliday; Food Services Correctional Officer Troy Walls ("CO Walls"); Trust Fund Supervisor Conal Smith ("TFS Smith"); Trust Fund Supervisor Melissa Matisko ("TFS Matisko"); Clinical Director Timothy Young, M.D. ("CD Young"); Health Services Administrator Laryn Newcomb ("HSA Newcomb"); Health Services Administrator Bryan Walls ("HSA Walls"); Food Services Administrator Adler Canales ("FSA Canales");

[1] Plaintiff was incarcerated at FCI Edgefield in South Carolina during the earlier events alleged, and was thereafter transferred to FCI Otisville in New York, where he was incarcerated at the time he filed the Complaint. (Compl. ¶¶ 3, 41–42.) Plaintiff has since notified the Court that he is currently incarcerated at FCI Williamsburg in South Carolina. (ECF No. 73.)

Warden Jamal Jamison; paramedics Jacob Knibbs and Michael Kabonick; and Correctional Captain Mark Argir (collectively, the "Individual Defendants").[2]

Plaintiff alleges that prison officials were negligent in violation of the FTCA, were deliberately indifferent to his serious medical needs and subjected him to cruel and unusual punishment in violation of the Eighth Amendment, retaliated against him in violation of the First Amendment, and denied him due process in violation of the Fifth Amendment.[3] (*See generally* Compl., ECF No. 1.) Plaintiff seeks monetary damages and declaratory and injunctive relief. (*Id.* at 21–25.)

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants move to dismiss the Complaint. Defendants filed their Memorandum of Law ("Def. Mem.," ECF No. 67), the Declaration of Assistant United States Attorney Harry K. Fidler with exhibits ("Fidler Decl.," ECF No. 68), and a Reply ("Def. Reply," ECF No. 71). Plaintiff filed an opposition.[4] ("Pl. Opp.," ECF No. 64.)

For the following reasons, Defendants' motion to dismiss is GRANTED.

---

[2] The Complaint and docket sheet render certain names differently, including "Di Stephano" (for Di Stefano) and "Paramedic Nibbs" (for Knibbs). The Court adopts the spellings of the Individual Defendants' names used in Defendants' submissions.

[3] The Complaint asserts violation of Due Process rights under the Fourteenth Amendment. (Compl. ¶ 82.) Because the Fourteenth Amendment applies to the states and Plaintiff challenges the conduct of federal officials, the Court liberally construes the claim as arising under the Fifth Amendment's Due Process Clause. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

[4] Because Plaintiff proceeds *pro se*, the Court also considers the factual allegations raised in his opposition papers to the extent they are consistent with the Complaint. *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018) (citing *Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013)). The Court additionally treats Plaintiff's Amended Opposition (ECF No. 64) as the operative opposition. ECF No. 72 (deeming the Amended Opposition operative and superseding Plaintiff's first-filed opposition at ECF No. 62).

## BACKGROUND

### I. Factual Allegations

The following facts are drawn from Plaintiff's Complaint and Opposition as well as the documents appended thereto and are accepted as true for purposes of this motion.

#### A. Plaintiff's Medical History

Plaintiff alleges that in 1989 he was shot in the abdomen, resulting in the removal of several feet of his intestines and the use of a colostomy bag for over a year, and that he has since suffered from severe and chronic constipation requiring particular foods and medications to move his bowels. (Compl. ¶ 19.) He was placed in custody of BOP in 2005. (*Id.* ¶ 20.) Plaintiff alleges that chronic constipation and straining caused him to develop hernias, and that between October 2015 and November 2018 he underwent five operations to repair a total of eighteen hernias in his abdominal and testicular areas. (*Id.* ¶ 21.)

On or about January 9, 2018, Plaintiff's surgeon diagnosed him with irritable bowel syndrome with constipation and chronic idiopathic constipation ("IBS-C/CIC") and formulated a treatment plan consisting of a "cocktail" of medications, including MiraLAX, Docusate, and Metamucil, a high-fiber diet, and a lifelong abdominal binder. (*Id.* ¶ 23.)

#### B. Events at FCI Edgefield

Plaintiff alleges that although his surgeon prescribed Metamucil, BOP health staff advised that Metamucil was no longer permitted within the BOP. (*Id.* ¶ 24.) After Plaintiff tried several fiber substitutes without success, the surgeon identified Equate brand psyllium fiber capsules as an acceptable alternative, and in July 2018 the then-Health Services Administrator and then-Warden authorized a Trust Fund Supervisor to purchase the Equate capsules from a retail store so that Plaintiff could buy them through the commissary by special purchase order. (*Id.* ¶¶ 26–27.)

Plaintiff alleges that this regimen, combined with high-fiber foods, controlled his symptoms, but that such foods were rarely available to him. (*Id.* ¶¶ 28–29.)

On September 10, 2020, following Plaintiff's requests for a high-fiber diet, the Health Services Administrator arranged a telehealth call with Defendant Di Stefano, a BOP dietician. (*Id.* ¶ 30.) Plaintiff alleges that, after he explained his medical history, Di Stefano recommended only "one side salad daily," which allegedly fell below the standard of care for his condition, and that his requests for reconsideration and a follow-up consultation were ignored. (*Id.* ¶¶ 30–31.) On April 12, 2021, Plaintiff was diagnosed with malabsorption and related conditions, including leukopenia and vitamin deficiencies, which he attributes to inadequate treatment of his IBS-C/CIC, and to BOP health staff prescribing a multivitamin rather than following the surgeon's plan. (*Id.* ¶ 32.)

Plaintiff alleges that in or about May 2021, a new administrative team, including Defendants CD Young, HAS Newcomb, and TFS Smith, assumed their positions at FCI Edgefield. (*Id.* ¶ 33.) Between September and November 2021, Smith allegedly stopped purchasing the Equate capsules and substituted other fiber products that were ineffective or caused adverse effects, and Plaintiff's symptoms worsened. (*Id.* ¶ 34.) On January 14, 2022, CD Young allegedly cancelled the multivitamin previously prescribed for Plaintiff's malabsorption and related conditions. (*Id.* ¶ 36.) Plaintiff further alleges that, between September and December 2022, three separate Non-Formulary Requests for Metamucil submitted by medical staff were denied by CD Young. (*Id.* ¶¶ 38–40.)

**C. Events at FCI Otisville**

Plaintiff alleges that he was transferred to FCI Otisville on or about December 28, 2022. (*Id.* ¶¶ 41–42.) He alleges that a January 2023 request for Metamucil was approved only as

Reguloid, a substitute fiber that had previously proven ineffective (*Id.* ¶ 43); that Defendant HSA Walls cancelled his previously prescribed Docusate (*Id.* ¶ 44); and that further Non-Formulary Requests for Metamucil submitted by various physicians in 2023 were denied or returned with ineffective substitutes. (*Id.* ¶¶ 47–49, 53) Plaintiff alleges that on a November 16, 2023 telehealth call, Defendant Holliday, a dietician, cancelled his previously ordered side salad and directed him to eat from the BOP's national menu and to "self-select" foods. (*Id.* ¶¶ 54–55.) Plaintiff alleges that Defendant FSA Canales likewise refused to provide a high-fiber diet and told him to eat from the national menu. (*Id.* ¶ 62.)

Plaintiff alleges that he has never received the prescribed high-fiber diet, that his condition has worsened, and that he was forced to rely on over-the-counter laxatives in large quantities to move his bowels. (*Id.* ¶¶ 45, 50–51, 63.)

### D. Alleged Retaliation

Plaintiff alleges that, in response to his repeated complaints and his efforts to seek assistance from persons outside BOP, prison staff retaliated against him. (*Id.* ¶¶ 57, 64.) At FCI Edgefield, he alleges that Defendant CO Walls, assigned to provide his side salad, regularly served him "a small cup of spoiled, wilted lettuce" (*Id.* ¶ 58), and that Defendants HSA Newcomb and TFS Smith belittled him with racial epithets and threatened him with disciplinary action and confinement in the Special Housing Unit ("SHU") if he continued to complain. (*Id.* ¶ 59.)

At FCI Otisville, Plaintiff alleges that Defendant TFS Matisko limited him to a single month's supply of Equate capsules and refused to stock other dietary items (*Id.* ¶ 64(a)); that Defendant Paramedic Knibbs threatened him with physical harm and SHU confinement if he did not stop complaining (*Id.* ¶ 64(b)); and that Defendant Paramedic Kabonick repeatedly harassed him, made racist and degrading remarks, and delayed his medication at "Pill Line". (*Id.* ¶¶ 66–68).

Plaintiff alleges that his fiancée contacted BOP officials and a National Public Radio reporter, and that an article naming Plaintiff and describing his treatment was published on December 13, 2023. (*Id.* ¶¶ 65, 71.)

Plaintiff alleges that on December 23, 2023, Defendant Kabonick refused to provide his medication after a family visit, and that after Plaintiff reported a subsequent encounter to Defendant Captain Argir, Defendant Kabonick filed a false disciplinary report against Plaintiff on December 27, 2023. (*Id.* ¶¶ 72–75.) As a result of the disciplinary report, Plaintiff was placed in a SHU cell by the Disciplinary Hearing Officer allegedly without allowing a defense; Plaintiff's appeal of that determination remains pending. (*Id.* ¶ 75.) Throughout, Plaintiff alleges that Defendants Warden Jamison and Captain Argir failed to intervene despite his complaints. (*Id.* ¶¶ 64, 68, 74–75.)

**II. Procedural History**

Plaintiff commenced this action on May 10, 2024. (ECF No. 1.) Following the issuance of summonses and the completion of service on the Individual Defendants (ECF Nos. 6, 10, 24–37), counsel appeared on behalf of Defendants (ECF Nos. 29, 33). After several extensions of the briefing schedule (ECF Nos. 44, 49, 52, 59), Defendants served and filed their motion to dismiss on September 8, 2025. (ECF Nos. 66–71.) Plaintiff filed an opposition, and subsequently filed an amended opposition, which the Court deemed the operative pleading. (ECF Nos. 62, 64, 72.) Defendants filed a reply. (ECF No. 71.)

## LEGAL STANDARD

**I. Rule 12(b)(1)**

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v.*

*United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008). In resolving a Rule 12(b)(1) motion, the court accepts all material factual allegations as true but does not draw inferences favorable to the party asserting jurisdiction and may consider evidence outside the pleadings. *See Libertarian Party of Erie Cnty. v. Cuomo*, 970 F.3d 106, 121 (2d Cir. 2020) (abrogated on other grounds); *Mid-New York Env't & Sustainability Promotion Comm., Inc. v. Dragon Springs Buddhist, Inc.*, 647 F. Supp. 3d 286, 290-91 (S.D.N.Y. 2022).

**II. Rule 12(b)(6)**

Under Rule 12(b)(6), dismissal is proper unless the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor but need not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* Where, as here, a plaintiff proceeds *pro se*, the court must construe the complaint liberally and interpret it to raise the strongest arguments it suggests, although a *pro se* plaintiff is not exempt from compliance with relevant rules of procedural and substantive law. *See Martinez v. Aycock-West*, 164 F. Supp. 3d 502, 508–09 (S.D.N.Y. 2016); *see also Parker v. Mack,* 460 F. App'x 62, 62 (2d Cir. 2012) (summary order) (a pro se complaint, though liberally construed, must satisfy the pleading standards of *Twombly* and *Iqbal*).

## DISCUSSION

### I. The FTCA Claim Against the United States

Plaintiff asserts a negligence claim under the FTCA. Defendants move to dismiss Plaintiff's FTCA claim under Rule 12(b)(1), arguing that the United States has not waived sovereign immunity because (a) Plaintiff failed to administratively exhaust his claim except as to the alleged negligence of TFS Smith, and (b) the claim as to TFS Smith is barred by the discretionary function exception. (Def. Mem. 7–12.) "The doctrine of sovereign immunity bars federal courts from hearing all suits for monetary damages against the federal government . . . except where sovereign immunity has been waived." *Tenzin v. United States Post Off. (Branch)*, No. 22-CV-9141 (LTS), 2022 WL 16836986, at *2 (S.D.N.Y. Nov. 7, 2022) (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). Waivers of sovereign immunity are strictly construed in favor of the sovereign. *See Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019). A limited waiver of sovereign immunity is provided by the FTCA, which permits a tort suit against the United States under specified circumstances. 28 U.S.C.A. § 2675(a); *Hamm v. United States*, 483 F.3d 135, 137 (2d Cir. 2007); *Cooke v. United States*, 918 F.3d at 81 (2d Cir. 2019).

#### A. Administrative Exhaustion

The FTCA "bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993). This requirement is jurisdictional and cannot be waived. *Celestine v. Mount Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005). Presentment requires a claimant to provide the agency with sufficient information to investigate and value the claim. *See Collins v. United States*, 996 F.3d 102, 119 (2d Cir. 2021) ("Presentment requires more than a conclusory statement of claim that makes it essentially impossible for an agency to know what it must investigate. It requires a

claimant to provide the reviewing agency with sufficiently specific information as to the basis for his claim, the nature of his injuries, and the amount of damages sought that the agency can reasonably understand what it must probe to determine liability, to value the claim, and to assess the advisability of settlement."); *see also Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998). Defendants contend that Plaintiff's administrative filing was limited to a "direct accusation against federal employee TFS Smith" regarding the substitution of his fiber supplement, and that the remaining allegations—including all events at FCI Otisville—were not presented. (Def. Mem. 8–9; Def. Reply 3–5 (citing Fidler Decl., Ex. A).) Plaintiff responds that his administrative submission incorporated supporting documents describing all relevant events, and that his later mailings to the legal assistant assigned to his tort claim placed the Government on notice; he further argues that any failure to exhaust should be excused. (Pl. Opp. 22–24.) Defendants reply that there is no equitable exception to the FTCA's jurisdictional exhaustion requirement, and that *Ross v. Blake*, 578 U.S. 632 (2016), on which Plaintiff relies, concerns the Prison Litigation Reform Act and is inapposite. (Def. Reply 3–5.)

The Court agrees with Defendants. The administrative tort claim Plaintiff submitted to BOP in May 2023, captioned by Plaintiff himself as a "direct accusation against federal employee TFS Smith," presented only the allegation that TFS Smith negligently interfered with Plaintiff's established fiber-supplement regimen at FCI Edgefield. (Fidler Decl., Ex. A.) That submission did not present additional allegations concerning events at FCI Otisville—which had not yet occurred when the claim was filed—or the conduct of any other individual. Because presentment is a jurisdictional prerequisite that affords the agency notice and an opportunity to investigate and value the claim, *see McNeil*, 508 U.S. at 113; *Celestine*, 403 F.3d at 82, the Court lacks subject

matter jurisdiction over any FTCA claim other than the negligence claim against the United States arising from TFS Smith's alleged discontinuation of the fiber supplement.

Plaintiff's arguments to the contrary are unavailing. That his submission referenced attached documents does not satisfy presentment as to claims those documents did not describe, and his subsequent correspondence with the legal assistant assigned to his claim cannot retroactively present allegations the claim itself did not contain. *See Collins*, 996 F.3d at 119. Nor may the Court excuse a failure to exhaust. In *Ross*, the Supreme Court held that a court "may not excuse a failure to exhaust" a mandatory statutory exhaustion requirement, and recognized that the sole exception stems from the Prison Litigation Reform Act's own, textual "availability" limitation—a limitation the FTCA does not contain. 578 U.S. at 639–42. Accordingly, the motion is granted to the extent of dismissing all FTCA claims for lack of subject matter jurisdiction, except those premised on TFS Smith's conduct. The Court now turns to the claim premised on TFS Smith's conduct.

**B. The Discretionary Function Exception**

Under the discretionary function exception ("DFE"), the United States retains immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function." 28 U.S.C. § 2680(a). The DFE applies where the challenged conduct (1) involves an element of judgment or choice not compelled by statute or regulation, and (2) is grounded in considerations of public policy. *See Carno v. United States*, No. 17-cv-7998, 2019 WL 2287966, at *10 (S.D.N.Y. May 28, 2019) (Román, J.). To determine whether the second prong is met, courts focus not on the intent of the government employee in exercising the discretion, but rather "on the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert,* 499 U.S. 315, 323–25 (1991). "Moreover, courts have

made it clear that there is no 'need [to] ask whether government actors decided the point explicitly or actually discussed it, for the inquiry hinges on whether some policy justification could have undergirded the challenged conduct.'" *Brown v. United States*, 661 F. Supp. 2d 341, 361 (E.D.N.Y. 2009) (quoting *Shansky v. United States,* 164 F.3d 688, 692 (1st Cir.1999)); *see also Gotha v. United States,* 115 F.3d 176, 180 (3d Cir.1997) (holding that "[t]he test is not whether the government actually considered each possible alternative in the universe of options, but whether the conduct was of the type associated with the exercise of official discretion") (internal quotations omitted); *Kiehn v. United States,* 984 F.2d 1100, 1105 (10th Cir.1993) (holding that government officials need not "make an actual 'conscious decision' regarding policy factors" because it is "irrelevant" if the decision was "a matter of 'deliberate choice' or a mere oversight").

Here, Defendants argue that commissary stocking decisions are discretionary and policy-driven, and that 18 U.S.C. § 4042(a) imposes only a general duty of care. (Def. Mem. 10–12.) Plaintiff responds that TFS Smith was implementing a medically authorized special purchase order and lacked discretion to discontinue it. (Pl. Opp. 24–25.)

The Court concludes that the DFE bars the remaining claim. As to the first prong, decisions concerning which products to stock and sell through a prison commissary, including over-the-counter health products, involve an element of judgment or choice and are not compelled by any statute or regulation. *See Wiley v. Fernandez*, No. 19-cv-00652, 2024 WL 779392, at *10 (N.D.N.Y. Jan. 19, 2024) (applying the exception to decisions regarding over-the-counter medication); *Janis v. United States*, No. 06-cv-1613, 2009 WL 564207, at *14 (S.D. Ind. Mar. 4, 2009) (the items and quantities to stock in commissary "is left to the discretion of prison administrators" and "[t]here are no mandatory rules, regulations, or statutes which mandate the type or amount of stock to be purchased for sale at the Commissary"). The general duty of care

imposed by 18 U.S.C. § 4042(a) does not remove that discretion because it "does not provide a set of specific instructions" for how BOP must fulfill its responsibilities. *Russo v. United States*, No. 20-cv-4999, 2021 WL 5403658, at *3 (S.D.N.Y. Nov. 18, 2021). Plaintiff's contention that the special purchase order was a medical authorization that stripped TFS Smith of discretion does not change the analysis. The special purchase order was an individualized commissary arrangement, not a statute or regulation that compelled a particular course of conduct.

As to the second prong, commissary stocking decisions are grounded in considerations of public policy, including budgetary constraints, security, available space, and anticipated inmate demand. *See Janis*, 2009 WL 564207, at *14. Such decisions are therefore precisely the kind of policy-laden judgments the DFE is designed to shield from judicial second-guessing. *See Carno*, 2019 WL 2287966, at *10. Accordingly, because both prongs are satisfied, the United States has not waived its sovereign immunity as to Plaintiff's claim regarding TFS Smith's alleged negligence, and the FTCA claim must be dismissed in its entirety for lack of subject matter jurisdiction. *Winters v. United States*, No. 10 CIV. 7571 JMF, 2013 WL 1627950, at *4 (S.D.N.Y. Apr. 16, 2013) ("Where the DFE applies, it follows that a court lacks subject matter jurisdiction to hear the claim.").

## II. The *Bivens* Claims Against the Individual Defendants

*Bivens* recognized an implied damages remedy against federal officers for certain constitutional violations. The Supreme Court has recognized *Bivens* claims in only three contexts: unreasonable search and seizure under the Fourth Amendment, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971); sex-based employment discrimination under the Fifth Amendment's Due Process Clause, *Davis v. Passman*, 442 U.S. 228 (1979); and deliberate indifference to a prisoner's life-threatening medical needs under the Eighth

Amendment, *Carlson v. Green*, 446 U.S. 14 (1980). The Court has since described expanding *Bivens* as a "disfavored judicial activity." *Ziglar v. Abbasi*, 582 U.S. 120, 135 (2017); *Egbert v. Boule*, 596 U.S. 482, 491 (2022). Courts ask whether the claim presents a new context and, if so, whether special factors counsel hesitation—a test that "often resolve[s] to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492; *see Cohen v. United States*, 640 F. Supp. 3d 324, 337 (S.D.N.Y. 2022).

**A. Whether Plaintiff's Claims Present New Contexts**

**1. Eighth Amendment Deliberate Indifference to Medical Needs**

Defendants argue that, although Plaintiff's claim sounds in the same theory as *Carlson*, it presents a new context because it alleges inadequate alternative treatment rather than a failure to treat, does not involve the inmate's death, and does not involve grossly incompetent care during an acute medical emergency. (Def. Mem. 14–15.) Plaintiff responds that his claim falls squarely within *Carlson* and relies on *Ellis v. United States*, No. 23-cv-8350, 2025 WL 895457 (E.D.N.Y. Mar. 24, 2025), as directly on point. (Pl. Opp. 25–26.) Defendants reply that *Ellis* is distinguishable and non-binding. (Def. Reply 8–10.)

The Court concludes that Plaintiff's Eighth Amendment deliberate indifference to medical needs claim arises in a new context. A claim presents a new context when it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court." *Ziglar*, 582 U.S. at 139. In *Carlson*, the Supreme Court recognized a remedy where prison officials, aware of an inmate's chronic asthma, failed for several hours to provide competent care during an acute emergency, administered contraindicated drugs, and caused his death. 446 U.S. at 16 n.1. Plaintiff's claim differs meaningfully: it challenges the adequacy of ongoing treatment for a

chronic, non-fatal gastrointestinal condition, alleging the substitution of one fiber product and dietary measure for another, rather than a failure to treat an acute, life-threatening emergency. Additionally, Plaintiff's reliance on *Ellis v. United States* is misplaced. *Ellis* is a non-binding, out-of-district decision and the claim that survived dismissal there concerned an acute traumatic injury that an officer refused to allow to be treated—the *Ellis* court in fact dismissed the portion of the claim premised on the plaintiff's gastrointestinal complaints.[5] 2025 WL 895457, at *5, *8. In any event, *Ellis* did not undertake the new context or special factors analysis that *Egbert* and *Ziglar* require. That Plaintiff's claim shares the same constitutional provision and general theory as *Carlson* does not avoid this conclusion because a plaintiff "cannot justify a *Bivens* extension based on parallel circumstances with…*Carlson* unless he also satisfies the analytic framework prescribed by the last four decades of intervening case law." *Egbert*, 596 U.S. at 485. Accordingly, the claim presents a new context, and the Court addresses the special factors inquiry in section II.B.

**2. Eighth Amendment Cruel and Unusual Punishment**

The Court agrees that this claim also presents a new context. The Supreme Court has never recognized a *Bivens* remedy for an Eighth Amendment claim premised on retaliatory threats, harassment, or deprivation, as distinct from the deliberate indifference theory recognized in *Carlson*. Thus, Plaintiff's retaliation-based cruel and unusual punishment claim arises in a new context and also requires a special factors analysis.

[5] In *Ellis*, the surviving claim concerned a corrections officer's alleged refusal to allow treatment of the plaintiff's fractured jaw and related facial injuries. 2025 WL 895457, at *8. The plaintiff's separate theory, that he was denied adequate water to take medication prescribed for his constipation, was dismissed. The court explained that "gastrointestinal issues similar to [the] [p]laintiff's do not alone plead a claim for a serious medical need" absent allegations that the condition presented urgency, degeneration, or extreme pain. *Id.* at *5. Thus, the theory that survived in *Ellis* is unlike the one Plaintiff advances here, and the theory most resembling Plaintiff's was rejected.

**3. First Amendment Retaliation**

Plaintiff's First Amendment retaliation claim is resolved not by the new context and special factors framework applied to his other claims, but by controlling Supreme Court precedent that forecloses the claim outright. In *Egbert*, the Supreme Court held that "there is no *Bivens* action for First Amendment retaliation," reasoning that the risk of "fear of personal monetary liability and harassing litigation" and Congress's superior position weigh against extending *Bivens* remedy to such claims. 596 U.S. at 498–99. Accordingly, Plaintiff's First Amendment claims—both the retaliation claim against the line staff and the related failure to intervene claim against Warden Jamison and Captain Argir—are not cognizable under *Bivens* and are dismissed.

**4. Fifth Amendment Due Process**

Plaintiff's due process claim—premised on a failure to intervene by Warden Jamison and Captain Argir—differs from the employment discrimination context of *Davis* and impermissibly seeks to hold supervisors liable for the acts of subordinates. The only recognized Fifth Amendment *Bivens* context is the sex-based employment discrimination claim of *Davis*, which bears no meaningful resemblance to Plaintiff's claim here. Moreover, the Supreme Court has declined to permit *Bivens* claims holding an individual responsible for the acts of their subordinates. *Ziglar*, 582 U.S. at 141 ("[A] *Bivens* claim is brought against the individual official for his or her own acts, not the acts of others. . . .*Bivens* is not designed to hold officers responsible for the acts of their subordinates.") (citing *Iqbal,* 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior.*")). Thus, Plaintiff's Fifth Amendment claim also arises in a new context and requires a special factors analysis.

**B. Whether Special Factors Counsel Hesitation**

Defendants argue that separation of powers concerns, Congress's legislation in the area of prisoners' rights, and the availability of alternative remedial structures all counsel against extending *Bivens* to Plaintiff's claims. The special factors inquiry asks whether "there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492; *see also Ziglar v. Abbasi*, 582 U.S. at 121 ("*Bivens* will not be extended to a new context if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'") (quoting *Carlson,* 446 U.S. at 18). "If there is even a single reason to pause before applying *Bivens* in a new context, a court may not recognize a *Bivens* remedy." *Egbert*, 596 U.S. at 492. Several such reasons are present here. BOP's administration of inmate medical care, dietary programs, and commissary operations is committed to agency discretion and governed by an extensive statutory and regulatory scheme. Congress, through the Prison Litigation Reform Act, has legislated comprehensively with respect to prisoner suits without creating a damages remedy of the kind Plaintiff seeks. *See Ziglar*, 582 U.S. at 148-49. And BOP's Administrative Remedy Program affords inmates an alternative means of seeking redress, which alone forecloses a *Bivens* remedy. *See Egbert*, 596 U.S. at 493; *Schulte*, 2022 WL 1468017, at *5. Accordingly, the Court declines to extend *Bivens* to Plaintiff's Eighth Amendment deliberate indifference claim, Eighth Amendment cruel and unusual punishment claim, and Fifth Amendment due process claim, and those claims are dismissed.

**III. Qualified Immunity**

Defendants alternatively argue that the Individual Defendants are entitled to qualified immunity, which shields officials from civil damages "unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the

time." *Liberian Cmty. Ass'n of Conn. v. Lamont*, 970 F.3d 174, 186 (2d Cir. 2020). (Def. Mem. 18–22.)

**A. Whether Plaintiff Pleads a Constitutional Violation**

**1. Medical Deliberate Indifference**

Plaintiff alleges that prison officials were deliberately indifferent to his serious medical needs. To state a claim for constitutionally inadequate medical care, a plaintiff must plead facts showing that (1) the deprivation of medical care was objectively "sufficiently serious" in light of a medical condition "that may produce death, degeneration, or extreme pain," and (2) the defendant-official acted with the requisite culpable state of mind. *See Irizarry v. Manhattan Corr. Ctr.*, No. 21-CV-5170 (LTS), 2021 WL 3668045, at *5 (S.D.N.Y. Aug. 17, 2021) (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). Deliberate indifference to a prisoner's serious medical needs constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Defendants argue that mere disagreement with the treatment provided does not establish deliberate indifference. (Def. Mem. 18–20.) Plaintiff responds that the deprivation need not be life threatening and that officials deliberately disregarded his treating physicians' recommendations. (Pl. Opp. 25–27.)

In evaluating the objective prong, the Court is not confined to the four corners of the Complaint. A complaint is deemed to include "documents that, although not incorporated by reference, are integral to the complaint." *See Sabir v. Licon-Vitale*, No. 3:20-CV-01552 (VAB), 2022 WL 1291731, at *7 (D. Conn. Apr. 29, 2022). A document is integral to the complaint where the plaintiff relied upon it in framing the pleading. *See Davila v. Lang*, 343 F. Supp. 3d 254, 267 (S.D.N.Y. 2018). Plaintiff's claim rests on his course of medical treatment, and the records documenting that treatment—which Plaintiff relies upon and Defendants submitted in support of

this motion—are properly considered in resolving the motion. Where the factual allegations of the Complaint are contradicted by the records upon which Plaintiff relied, "the documents control, and the Court need not accept the allegations contained within the complaint as true." *Davila*, 343 F. Supp. 3d at 267.

Regarding the objective prong, a medical need is sufficiently serious where it presents "a condition of urgency such as one that may produce death, degeneration, or extreme pain," and one that a reasonable physician or patient would find "important and worthy of treatment." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). The condition "need not be life-threatening" to qualify, but "it must be more than simply uncomfortable and annoying." *Mallet v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 126 F.4th 125, 131 (2d Cir. 2025); *see also Abreu v. Lipka*, 778 F. App'x 28, 30–32 (2d Cir. 2019) (summary order) (need is serious where denial of treatment "could result in further significant injury").

Plaintiff's records do not support an objectively serious medical need. Throughout the period from 2017 to 2022, Plaintiff was treated on numerous occasions for gastrointestinal complaints and consistently diagnosed with irritable bowel syndrome and chronic constipation. (*See* Fidler Decl., Ex. A, ECF No. 68-1.) The contemporaneous clinical examinations, however, were predominantly benign: providers repeatedly recorded that Plaintiff was in no acute distress and voiced complaints of pain associated with stomachaches and constipation. (*See generally id.*) For example, the two encounters reflecting abnormal findings—a notation of abdominal tenderness and a "worsening hemorrhoidal episode"—are isolated and do not describe a condition of urgency producing death, degeneration, or extreme pain. (*Id.* at 137–38, 149.)

To the extent Plaintiff contends that the intermittent nature of his symptoms suffices, the seriousness inquiry for a claim based on a temporary or intermittent interruption in treatment is

tailored to the particular risk of harm arising from the challenged interruption, and the "absence of adverse medical effects" is highly relevant to that inquiry. *Smith v. Carpenter*, 316 F.3d 178, 185–87 (2d Cir. 2003) (affirming judgment for defendants where the plaintiff showed no adverse consequences from two instances of missed medication). Here, the records disclose no adverse medical consequence traceable to the challenged substitutions and dietary measures. Plaintiff's multiple cited cases are also distinguishable. For example, this case is unlike *Collymore v. Krystal Myers,* RN, 74 F.4th 22, 31 (2d Cir. 2023), where the inmate's "severe and unmanaged pain" was objectively manifested in observable lesions that "ooze pus"; the pain due to constipation and stomachaches Plaintiff describes does not rise to such level of seriousness. This case is also unlike the diabetic plaintiff in *Johnson v. Harris*, 479 F. Supp. 333, 335–37 (S.D.N.Y. 1979), who was served food his physician warned "could be disastrous to his health"; Plaintiff does not allege that the diet available to him was dangerous, but only that it was not the high-fiber diet he preferred for a chronic, non-emergent condition. *See Hodge v. Coughlin*, No. 92-CV-0622, 1994 WL 519902, at *9 (S.D.N.Y. Sept. 21, 1994) (a provider's reasonable pursuit of a different course of treatment does not establish deliberate indifference), *aff'd*, 53 F.3d 310 (2d Cir. 1995). Nor does *Brandon v. Kinter*, 938 F.3d 21 (2d Cir. 2019), assist Plaintiff. *Brandon* concerned a detainee's First Amendment free exercise challenge to the denial of religious meals, not deliberate indifference to a serious medical need, and therefore, is inapplicable to Plaintiff's Eighth Amendment deliberate indifference claim. Accordingly, Plaintiff has not pleaded an objectively serious medical need under *Estelle* and *Hill*, and Plaintiff's deliberate indifference claim under the Eighth Amendment fails as to all Individual Defendants on that basis alone.

The claim independently fails on the subjective prong as well. Even assuming Plaintiff had an objectively serious medical need, "a plaintiff must plead and prove the elements of the

underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020). Moreover, "[i]t is well established that mere disagreement over the proper treatment does not create a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998); *see also Wright v. Martin*, No. 23-7762-PR, 2025 WL 1091221, at *3 (2d Cir. Apr. 8, 2025) (summary order) (affirming summary judgment where prison medical staff declined to order an MRI for an inmate's chronic abdominal pain but instead ordered X-rays and prescribed pain medication based on their clinical judgment). Here, the Complaint alleges, at most, disagreements with the medical and administrative decisions each defendant made regarding Plaintiff's treatment, not facts supporting a plausible inference that any defendant knowingly disregarded a substantial risk to Plaintiff's health. For example, Defendant Di Stefano, a dietician, recommended that Plaintiff receive a daily side salad. (Compl. ¶ 30.) Even if Plaintiff believed that recommendation was inadequate, it reflects the exercise of professional judgment rather than conscious disregard of a serious medical need. Defendant Holliday, another dietician, directed Plaintiff to follow the BOP National Menu and "self-select" appropriate foods. (*Id.* ¶ 55.) Plaintiff's disagreement with that dietary advice does not establish deliberate indifference. Defendant TSA Smith discontinued one brand of fiber supplement and ordered others in its place. (*Id.* ¶ 34.) Likewise, Defendant CD Young allegedly cancelled a multivitamin order and denied several requests for non-formulary Metamucil while other treatment remained available. (*Id.* ¶¶ 36, 38–40.) These allegations concern treatment decisions and the selection among available alternatives, not the denial of medical care. Defendant HSA Newcomb allegedly limited Plaintiff's access to Health Services and his medications. (*Id.* ¶ 59.) That allegation is wholly conclusory and therefore insufficient to support a plausible claim of deliberate indifference. Defendant HSA Walls allegedly discontinued a previously prescribed stool softener, which are typically available over the counter. (*Id.* ¶ 44.)

Viewed in the context of Plaintiff's ongoing treatment, the discontinuation of one medication does not plausibly suggest conscious disregard of a serious risk. Defendant FSA Canales allegedly declined to provide a high-fiber diet outside ordinary channels and instead directed Plaintiff to the National Menu. (*Id.* ¶¶ 62–63.) And Defendant TSF Matisko allegedly approved a one-month supply of Plaintiff's preferred fiber supplement but declined to stock additional items. (*Id.* ¶ 64(a).) Neither allegation reflects the denial of medical care; rather, each concerns the manner in which Plaintiff's dietary requests were addressed. Finally, Warden Jamison is alleged only to have failed to intervene in the foregoing decisions. (*Id.* ¶¶ 62, 64.) But a defendant may not be held liable under *Bivens* based solely on his supervisory position; absent factual allegations showing his own deliberate indifference, the claim against Warden Jamison fails. *See Tangreti*, 983 F.3d at 618, 620.

Citing to *Johnson v. Wright*, Plaintiff argues that the Individual Defendants did not merely disagree with his physicians but overrode their recommendations, which, he contends, can constitute deliberate indifference. 412 F.3d 398 (2d Cir. 2005). It is true that officials may not "deliberately disregard[] a recommendation by a treating physician," and that deliberate indifference may lie where officials "ignore the medical recommendations of a prisoner's treating physicians." *Id.* at 404. But *Wright* involved the wholesale rejection of the unanimous recommendation of all of the plaintiff's treating physicians, including the prison's own, pursuant to a blanket policy. *Id.* at 406. None of the foregoing actions reflect the prison staff outright ignoring the physician's recommendations. Similarly, in *Rodriguez v. Manenti*, 606 F. App'x 25, 27 (2d Cir. 2015) (summary order), the defendant delayed for over a year the surgery that the plaintiff's treating physician had identified as the medically necessary course. The allegations here are of a different order. Plaintiff does not allege that any Defendant countermanded the unanimous

judgment of his treating physicians or refused a specific intervention they deemed necessary; rather, he alleges that particular products or over-the-counter medicine were substituted, adjusted, or discontinued while treatment otherwise continued. Where an official declines to follow one recommendation but treatment is otherwise provided, the conduct amounts, at most, to negligence, not deliberate indifference. *See Ellis v. Kim,* No. 23-CV-5309, 2024 WL 4882702, at *6 (S.D.N.Y. Nov. 25, 2024) (declining to follow a differing recommendation "shows that Defendant [was] negligent," not deliberately indifferent). Nor do the allegations describe the intentional interference with prescribed care condemned in *Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021), or *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir. 1987). Throughout the period alleged, the records reflect that Plaintiff received continuous and responsive treatment, including fiber supplements, MiraLAX, Colace, lubiprostone, linaclotide, and bisacodyl, prescribed and adjusted by his providers. (*See generally* Fidler Decl., Ex. A.) The remaining authorities cited in Plaintiff's opposition are similarly distinguishable and fail to support Plaintiff's claim. Accordingly, because Plaintiff has not pleaded facts to state a claim for constitutionally inadequate medical care, the Individual Defendants are entitled to qualified immunity as to Plaintiff's medical deliberate indifference claim under the Eighth Amendment and such claims are dismissed as to all Individual Defendants.

**2. Cruel and Unusual Punishment**

The Eighth Amendment's prohibition on cruel and unusual punishment is offended by conduct that is "repugnant to the conscience of mankind." *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015). To state such a claim, a plaintiff must allege conduct that was objectively serious enough to reach constitutional dimensions. For the reasons discussed *supra* in Section III.A.1, Plaintiff fails to allege a violation of the Eighth Amendment as to Defendants Di Stefano, Holliday,

TFS Smith, CD Young, HSA Newcomb, HSA Walls, FSA Canales, and TFS Matisko. The Court now turns to the remaining Individual Defendants— CO Walls, Knibbs, and Kabonick.

CO Walls is alleged to have served Plaintiff "a small cup of spoiled, wilted lettuce" in place of an adequate side salad. (Compl. ¶ 58.) The service of a single inadequate or unappetizing food item, unaccompanied by any allegation that Plaintiff was denied nutrition adequate to maintain his health, does not rise to the level of cruel and unusual punishment.[6] The conduct alleged, however unprofessional, is not "repugnant to the conscience of mankind." *Crawford*, 796 F.3d at 256.

Defendant Knibbs is alleged to have threatened Plaintiff with physical harm and confinement in the SHU if he did not stop complaining. (*Id.* ¶ 64(b).) The threats attributed to Knibbs, while alleged to have caused distress, are not accompanied by any allegation of actual physical contact or injury and therefore are not actionable under the Eighth Amendment. Verbal harassment and threats, unaccompanied by any injury, do not violate the Eighth Amendment. *See Cusamano v. Sobek,* 604 F. Supp. 2d 416, 512 (N.D.N.Y. 2009) ("mere allegations of verbal abuse do not rise to the level of a constitutional violation").

Finally, Defendant Kabonick is alleged to have filed a false disciplinary report against Plaintiff in retaliation for his complaints. (*Id.* ¶¶ 72–75.) "A prison inmate has no general constitutional right to be free from false accusations in a misbehavior report. Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, a plaintiff must be able to show either: (1) that he was disciplined without adequate due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Parker v. City of New York,* No. 05 Civ. 1803(PKC)(GWG), 2008 WL 110904 at *10 (S.D.N.Y. Jan. 7, 2008) (citations and internal quotations omitted). Here, Plaintiff alleges that

[6] Nor does Plaintiff allege that the Defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. at 840.

Defendant Kabonick filed a retaliatory false misbehavior report against him on December 27, 2023, one day after Plaintiff had reported Defendant Kabonick to his superiors for alleged harassment, and that he was denied a disciplinary hearing and ultimately penalized as a result of the report. (*Id.* ¶¶ 72–75.) These allegations, if true, do not state a claim for cruel and unusual punishment under the Eighth Amendment. However, liberally construing the Complaint in light of Plaintiff's pro se status, the Court concludes that they are sufficient to state an *FTCA* claim (not *Bivens*) as to Defendant Kabonick's deprivation of Plaintiff's Fifth Amendment due process rights by causing Plaintiff to be disciplined without adequate procedural protections (i.e., a hearing). *See also Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) ("It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest.*") (internal quotations omitted and emphasis added). Nevertheless, pursuant to the Prison Litigation Reform Act, Plaintiff must exhaust his administrative remedies prior to asserting such a claim and, as discussed *supra* in Section I.A., Plaintiff administratively exhausted only his claim as to the alleged negligence of TFS Smith.[7]

Accordingly, Plaintiff's Eighth Amendment cruel and unusual punishment claim is dismissed as against each of the Individual Defendants.

**3. Fifth Amendment Due Process**

Plaintiff asserts a Fifth Amendment due process claim against Warden Jamison and Captain Argir, premised on their alleged failure to intervene in Defendant Kabonick's filing of an allegedly false disciplinary report. (Compl. ¶¶ 74–75, 82.) A *Bivens* claim requires that "a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official"; there is no special rule of liability for supervisory officials. *Tangreti,* 983 F.3d at 618,

[7] To the extent Plaintiff's allegations against Defendant Kabonick constitutes a claim under the FTCA, the claim is dismissed for failure to exhaust his administrative remedies.

620. A "complaint that does not allege the personal involvement of each defendant is fatally defective on its face." *Gottesfeld,* 2020 WL 1082590, at *11.

Here, Plaintiff alleges only that he reported Defendant Kabonick's conduct to Warden Jamison and Captain Argir and that they failed to intervene. (Compl. ¶¶ 74–75.) Plaintiff does not allege that either Defendant participated in the disciplinary proceeding, reviewed or ratified the allegedly false report, or took any action that itself deprived Plaintiff of process. The allegation that a supervisory official failed to act upon a prisoner's complaint does not establish that official's personal involvement in a constitutional violation. *See Tangreti*, 983 F.3d at 620.

Accordingly, because Plaintiff fails to plead individual conduct by Warden Jamison or Captain Argir that on its own rises to the level of a deprivation of due process, Plaintiff's Fifth Amendment due process claim is dismissed as to Warden Jamison and Captain Argir.

**B. Whether Unlawful Conduct Was Clearly Established**

In light of the foregoing, and because Plaintiff has failed to plead the violation of any constitutional right, the Court need not address the second prong of the qualified immunity analysis. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted) (the qualified immunity doctrine shields federal and state officials from liability for damages insofar as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *see also Wyant v. Okst*, 101 F.3d 845, 857 (2d Cir. 1996) (qualified immunity applies where "(1) [the official's] conduct does not violate clearly established constitutional rights, or (2) it was objectively reasonable for [the official] to believe [his] acts did not violate those rights"). Accordingly, all Individual Defendants are entitled to qualified immunity.

## IV. Equitable Relief

In addition to monetary damages, Plaintiff seeks declaratory and injunctive relief, including an order directing that he be seen by an outside specialist, that his prescribed treatment plan and diet be provided, and that the disciplinary conviction be expunged. (Compl. at 23–24.) Such relief is unavailable on the claims Plaintiff has asserted. "The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities"; *Bivens* does not authorize declaratory or injunctive relief. *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (citing *Polanco v. U.S. Drug Enforcement Admin.,* 158 F.3d 647, 652 (2d Cir.1998)). Because Plaintiff's *Bivens* claims are dismissed in their entirety, and because those claims could in any event support only a claim for damages, they furnish no basis for the equitable relief Plaintiff seeks.

The FTCA likewise provides no basis for that relief. The FTCA's limited waiver of sovereign immunity authorizes only claims for money damages and does not extend to actions seeking declaratory or injunctive relief. *See Schulte v. United States*, No. 21-cv-4042, 2024 WL 708196, at *1 n.1 (S.D.N.Y. Feb. 21, 2024). In any event, Plaintiff's FTCA claim as to TFS Smith also has been dismissed for lack of subject matter jurisdiction.

Accordingly, to the extent the Complaint seeks declaratory or injunctive relief for his *Bivens* and FTCA claims, such relief is denied as unavailable.

## V. Leave to Amend

A district court "should not dismiss [a pro se complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation marks omitted). Leave to amend may be denied, however, where amendment would be futile, that is,

where "the problem with [the] causes of action is substantive" and "better pleading will not cure it." *Id.*

The bulk of the deficiencies identified above are not curable by repleading. Plaintiff's First Amendment claims fail because the Supreme Court has held that no *Bivens* remedy exists for First Amendment retaliation. *See Egbert*, 596 U.S. at 499. Plaintiff's Eighth Amendment cruel and unusual punishment and deliberate indifference claims as well as his Fifth Amendment due process claim fail because they arise in new contexts in which special factors counsel against recognizing a *Bivens* remedy. These defects are legal rather than factual: the deficiency is not that Plaintiff has alleged too little, but that the law does not afford a damages remedy for these claims against these federal officials. No amendment to the factual allegations could change that conclusion and leave to amend as to the *Bivens* claims is therefore denied as futile. *See Egbert,* 596 U.S. at 499; *Cuoco*, 222 F.3d at 112.

Plaintiff's FTCA claim is dismissed for lack of subject matter jurisdiction, both for failure to exhaust as to all allegations other than those concerning TFS Smith and under the discretionary function exception as to the allegation concerning TFS Smith's conduct. Because a dismissal for lack of subject matter jurisdiction is not an adjudication on the merits, that dismissal is without prejudice with Plaintiff granted leave to replead. The Court notes, however, that the unexhausted allegations may now be barred by the FTCA's statute of limitations, and that the conduct underlying the exhausted claim falls within the discretionary function exception as a matter of law, such that repleading may not cure the jurisdictional defects.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED. Plaintiff's claims under *Bivens* against the Individual Defendants—for deliberate indifference to serious medical

needs and cruel and unusual punishment under the Eighth Amendment, for retaliation under the First Amendment, and for denial of due process under the Fifth Amendment—are dismissed with prejudice. Plaintiff's claim under the Federal Tort Claims Act against the United States is dismissed without prejudice for lack of subject matter jurisdiction.

Plaintiff is granted leave to amend and may replead his FTCA claims so long as they are not barred by the FTCA's statute of limitations. If he chooses to do so, Plaintiff will have until September 18, 2026 to file an Amended Complaint consistent with this Opinion and Order. Plaintiff is advised that the Amended Complaint will replace, not supplement, his original Complaint, so any claims he wants to pursue must be included in or attached to the Amended Complaint. An Amended Complaint Form is attached to this Order. Defendants are then directed to answer or otherwise respond to the Amended Complaint by October 23, 2026. If Plaintiff fails to file an Amended Complaint by the deadline, and he cannot show good cause to excuse such a failure, the claims dismissed without prejudice by this Order will be deemed dismissed with prejudice.

The Clerk of Court is respectfully directed to mail a copy of this Opinion & Order to *pro se* Plaintiff at his address as listed on ECF, to show service on the docket, and to terminate the motion at ECF No. 66.

SO ORDERED.

Dated: August 11, 2026
White Plains, New York

Hon. Nelson S. Román
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Write the full name of each plaintiff.

_____CV_______________
(Include case number if one has been assigned)

-against-

**AMENDED COMPLAINT**

Do you want a jury trial?
☐ Yes ☐ No

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I. LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐ Violation of my federal constitutional rights

☐ Other: ___________________________________

## II. PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

First Name Middle Initial Last Name

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

Current Place of Detention

Institutional Address

County, City State Zip Code

## III. PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐ Pretrial detainee
☐ Civilly committed detainee
☐ Immigration detainee
☐ Convicted and sentenced prisoner
☐ Other: ___________________________________

## IV. DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name Last Name Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City State Zip Code

Defendant 2:

First Name Last Name Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City State Zip Code

Defendant 3:

First Name Last Name Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City State Zip Code

Defendant 4:

First Name Last Name Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City State Zip Code

## V. STATEMENT OF CLAIM

Place(s) of occurrence: ______________________________

Date(s) of occurrence: ______________________________

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

## VI. RELIEF

State briefly what money damages or other relief you want the court to order.

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

____________________ ____________________

Dated Plaintiff's Signature

________________________________________

First Name Middle Initial Last Name

________________________________________

Prison Address

________________________________________

County, City State Zip Code

Date on which I am delivering this complaint to prison authorities for mailing: ________________